UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LIBERTY MUTUAL FIRE INSURANCE
COMPANY; LM GENERAL INSURANCE
COMPANY; LM INSURANCE
CORPORATION; and SAFECO
INSURANCE COMPANY OF ILLINOIS,

C.A. No. 20-cv-11957-BAF-RSW

Plaintiffs,

v.

ADVANCED CENTRAL LABORATORY,
LLC and FUTURE DIAGNOSTIC CENTER
LLC,

Defendants.

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR CONTEMPT AND
FOR COSTS AND SANCTIONS AGAINST DEFENDANTS ADVANCED
CENTRAL LABORATORY LLC AND FUTURE DIAGNOSTIC
CENTER LLC**

# **TABLE OF CONTENTS**

Table of Contents .................................................................................. i

Issues Presented ................................................................................ iii

Controlling Authorities .......................................................................iv

Brief in Support of Motion for Contempt and for Costs and Sanctions against
Advanced Central Laboratory LLC and Future Diagnostic Center LLC ................. 1

   I.    Introduction ......................................................................... 1

   II.   Relevant Background ........................................................ 2

   III.  Discussion......................................................................... 4

          A. Standard of Review ...................................................... 4

          B. The Defendants Have Knowingly Violated Two Clear and
             Unambiguous Orders of This Court ...................................... 5

                1. Prohibited Objections ........................................... 5

                2. Missing Documents ............................................7

                      a. Patient Records................................................ 7

                      b. Emails and Other Communications ...................... 9

                      c. Records Pertaining to Laboratory  Equipment.... 14

                      d. Contracts.......................................................15

                      e. Accounting, Banking, and Corporate
                         Documents.....................................................17

                3. Incomplete and Evasive Responses. ...................18

C. Substantial Sanctions, Including the Entry of Default Judgment against the Defendants, Are Appropriate in Light of the Repeated, Willful Violations of This Court's Orders ........................................ 20

IV.   Conclusion ............................................................................................. 24

## ISSUES PRESENTED

1. Whether defendants Advanced Central Laboratory LLC and Future Diagnostic Center LLC should be held in contempt for violating two Court Orders?

   Liberty Mutual answers: Yes

   Advanced Central Laboratory LLC answers: No

   Future Diagnostic Center LLC answers: No

2. Whether Liberty Mutual should be awarded costs, including attorney's fees, incurred in relation to this motion?

   Liberty Mutual answers: Yes

   Advanced Central Laboratory LLC answers: No

   Future Diagnostic Center LLC answers: No

3. Whether sanctions, including default judgment, should be imposed against Advanced Central Laboratory LLC and Future Diagnostic Center LLC for their failure to comply with this Court's Order?

   Liberty Mutual answers: Yes

   Advanced Central Laboratory LLC answers: No

   Future Diagnostic Center LLC answers: No

# CONTROLLING AUTHORITIES

## CASES

Annabel v. Erichsen, 2019 U.S. Dist. LEXIS 68626 (E.D. Mich. March 15, 2019)

Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067 (6th Cir. 1990)

Berry v. Ocwen Loan Servicing, 2020 U.S. Dist. LEXIS 40353 (W.D. Tenn. Mar. 9, 2020)

Elec. Workers Pension Trust Fund of Local Union No. 58, IBEW v. Gary's Elec. Service Co., 340 F.3d 373 (6th Cir. 2003)

Grange Mut. Gas. Co. v. Mack, 270 Fed. Appx. 372 (6th Cir. 2008)

Laues-Gholston v. Mercedes-Benz Fin. Servs. USA, LLC, 2014 U.S. Dist. LEXIS 184021 (E.D. Mich. Nov. 28, 2014)

New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.,) 577 B.R. 690 (W.D. Mich. 2017)

Rolex Watch U.S.A. v. Crowley, 74 F.3d 716 (6th Cir. 1996)

Stooksbury v. Ross, 528 Fed. Appx. 547 (6th Cir. 2013)

United States v. Reves, 307 F.3d 451 (6th Cir. 2002)

Williams v. Goldman, Price & Assocs., LLC, 2013 U.S. Dist. LEXIS 164402 (E.D. Mich. Sept. 30, 2013)

## RULES

Fed. R. Civ. P. 33

Fed. R. Civ. P. 34

Fed. R. Civ. P. 37

Plaintiffs Liberty Mutual Fire Insurance Company, LM General Insurance Company, LM Insurance Corporation, and Safeco Insurance Company of Illinois (collectively, "Liberty Mutual") hereby submit the within brief in support of their motion for an order holding defendants Advanced Central Laboratory, LLC ("Advanced Central") and Future Diagnostic Center LLC ("Future Diagnostic") (collectively, the "defendants") in contempt for violating several Court Orders and for sanctions, including the entry of default judgment.

## I.    **INTRODUCTION**

The defendants have now violated two (2) Court Orders to produce documents and information responsive to discovery requests that were served by Liberty Mutual five (5) months ago.  Both Orders were clear and unambiguous, and both Orders were clearly disregarded by the defendants.  After violating the first Order, which was a stipulated second extension of time for the defendants to respond, and after Liberty Mutual was forced to file a motion to compel discovery responses, the defendants were ordered to respond "fully" to Liberty Mutual's discovery requests or face "further sanctions, which may include entry of a default judgment." *See* ECF No. 60.  Despite this, the defendants have again refused to produce discovery responses and documents and have again directly violated an express Order.  For this reason, and as further addressed herein, the defendants

should be held in contempt and sanctions, including the entry of default judgment, should issue against them.

## II.   **RELEVANT BACKGROUND**

Liberty Mutual served concise and narrowly tailored interrogatories and requests for production of documents (the "discovery requests") on each defendant on October 20, 2020.  *See* Exhibits A through D.  Liberty Mutual initially agreed to extend the defendants' time to respond to discovery until December 15, 2020, and this Court entered an Order memorializing that agreement.  *See* ECF No. 50.  Despite having over seven (7) weeks to respond to Liberty Mutual's discovery requests, the defendants requested additional time to respond.  Liberty Mutual agreed to a second extension of the defendants' time to respond to the discovery requests, and this Court entered a second Order on December 17, 2020 mandating that the defendants "shall serve responses and produce documents to [Liberty Mutual's] first interrogatories, first requests for production of documents, and first requests for admission on or before December 21, 2020."  *See* ECF No. 52.

Advanced Central and Future Diagnostic disregarded this Court's Order by failing to produce a single document to Liberty Mutual by December 21, 2020 and by providing unsigned, vague, and clearly incomplete responses to interrogatories. *See* ECF No. 53, PageID 999.  After several attempts to correct the defendants' deficiencies through conferences between the parties, Liberty Mutual filed a motion

to compel on January 13, 2021.  *See* ECF No. 53.  The Honorable Magistrate Judge Whalen granted the motion on February 23, 2021, giving the defendants fourteen (14) days to "fully" respond to discovery including by producing all responsive documents, and awarded monetary sanctions.  *See* ECF No. 60.  Judge Whalen further expressly stated "[t]hese Defendants' failure to comply with this Order, or with any discovery order of this Court, will result in further sanctions, which may include entry of a default judgment."  Id.  As discussed below, the defendants have failed to comply with that Order.

The defendants served supplemental responses to Liberty Mutual's discovery on March 10, 2021, which was after the deadline set by Judge Whalen and clearly shows that the defendants still are not taking seriously their obligation to comply with discovery and Court Orders despite having already been subjected to monetary sanctions.  *See* Exhibits E through H.  Remarkably, the supplemental interrogatory answers served on March 10, 2021 are **<u>still</u>** unsigned in violation of Fed. R. Civ. P. 33.  *See* Exhibits E and G.  At the hearing on February 23, 2021, Judge Whalen was clear that "any objections have been waived, except for objections based on privilege . . . ."  *See* ECF No. 62, PageID 1277.  Despite this clear holding, the defendants' supplemental responses are rife with objections, including meritless objections to things like accounting materials that Judge Whalen expressly held are not applicable.  *See* Exhibits E through H.  Judge Whalen could not have been clearer that "failure

to comply with [its] order, or any discovery order of this Court, will result in further sanctions.  It could result in a default judgment." *See* ECF No. 62, PageID 1278. The defendants have ignored that warning and the only appropriate consequence for their continued failure to meaningfully participate in this litigation and their failure to follow the Court's Orders is default judgment.

## III.    DISCUSSION

### A.    STANDARD OF REVIEW

A court may find a party in contempt when it has "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."  New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.), 577 B.R. 690, 709 (W.D. Mich. 2017), quoting Elec. Workers Pension Trust Fund of Local Union No. 58, IBEW v. Gary's Elec. Service Co., 340 F.3d 373, 379 (6th Cir. 2003).  "[W]here it is established that a party has violated a court order, the burden shifts to that party to show an inability to comply."  Williams v. Goldman, Price & Assocs., LLC, 2013 U.S. Dist. LEXIS 164402, *4 (E.D. Mich. Sept. 30, 2013).  To satisfy this burden, "a defendant must show categorically and in detail why he or she is unable to comply with the court's order."  Rolex Watch U.S.A. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996).

**B.    THE DEFENDANTS HAVE KNOWINGLY VIOLATED TWO CLEAR AND UNAMBIGUOUS ORDERS OF THIS COURT**

There can be no dispute that the defendants have knowingly violated two (2) clear and unambiguous Court Orders.  First, the defendants disregarded the agreed-upon, twice-extended, and Court-Ordered deadline to produce discovery by failing to produce any documents whatsoever and serving deficient interrogatory responses. *See* ECF No. 53, PageID 1005-1008.   Now the defendants have knowingly disregarded Judge Whalen's clear Order compelling them to fully respond to discovery by March 9, 2021, or face "further sanctions, which may include entry of a default judgment."  *See* ECF No. 60.

Instead of serving full discovery responses on March 9, 2021, the defendants produced a wholly deficient set of documents on March 10, 2021, that excludes entire categories of documents without explanation, withholds responsive documents that must exist, and asserts objections that Judge Whalen expressly forbid.  *See* Exhibits F and H.  The defendants also failed to rectify their deficient interrogatory responses.  *See* Exhibits E and G.  An affidavit describing the limited amount the defendants produced on March 10, 2021 is attached hereto as Exhibit I. The most serious deficiencies are discussed below.

**1.    Prohibited Objections**

Judge Whalen was clear that the defendants must produce all responsive, non-privileged documents and that "any objections have been waived except, except for

objections based on privilege, attorney/client privilege, work product." *See* ECF No. 62, PageID 1277. Despite this direction, and Judge Whalen's admonishment against boilerplate objections (id. at PageID 1276-1277), every single response to requests for the production of documents served by both defendants states nearly identical boilerplate objections. The boilerplate objection reads (with slight variations):

> [Defendant] objects to this RFP as vague, ambiguous, overbroad, privileged, and unduly burdensome. However, in in [sic] the spirit of cooperation and **without waiving** stated objections and privileges, [Defendant] will produce responsive, non-privileged documents in its possession, control and custody.

*See* Exhibits F and H (emphasis added). As detailed below, there are large categories of documents that are known to exist and are clearly responsive to Liberty Mutual's discovery requests that have not been produced. It appears that the defendants may have withheld some or all of these documents from production based on these objections that were expressly foreclosed by Judge Whalen's ruling.

The one exception to the defendants' standard boilerplate objection is that both defendants asserted a different objection to request number 37, and, in violation of Judge Whalen's Order, used that objection as a basis to refuse to produce documents. The request and responses read as follows:

> 37.     All documents and records related to any criminal, regulatory, agency, tax, and/or disciplinary investigation taken against [Defendant] and any owner or employee of [Defendant] by any state and/or federal agency during the relevant period.

**Objection: Relevance. Form and Foundation. Vague. Ambiguous.
Overly broad and unduly burdensome. Confidential.**

Id.  Moreover, in response to a number of other requests, the defendants state that

they do not have responsive documents, but they have no done so here.  Accordingly,

it appears that the defendants do have documents responsive to request 37, and they

are refusing to produce them in direct violation of Judge Whalen's Order.

### 2. <u>Missing Documents</u>

### a. **Patient Records**

Advanced Central and Future Diagnostic fraudulently billed Liberty Mutual

for extensive urine testing panels that were medically unnecessary or never

performed at all, were unbundled in violation of coding guidelines, and were charged

at unreasonable rates.  *See, e.g.,* ECF No 1, ¶¶ 121-132, 196-243, 377-389, 401-410.

Moreover, Advanced Central and Future Diagnostic billed for this improper and

unnecessary purported urine drug testing in accordance with predetermined

protocols designed to benefit themselves, their co-conspirators, and the RICO

enterprises they conducted.  <u>Id</u>. at ¶¶ 85-109, 148-164, 468-524.  Central to these

claims are the patient records that the defendants are required by Michigan state law

to maintain, showing what tests were ordered, what tests were actually performed,

and the legitimate reasons for performing them, if there were any, to support the

charges made to Liberty Mutual and its insureds.  Liberty Mutual requested such

documents directly in request for production number 11 to each of the defendants.

*See* Exhibits F and H. The defendants have almost completely failed to provide these crucial documents.

Liberty Mutual's Complaint specifically identifies 118 separate patients for whom Advanced Central and Future Diagnostic submitted fraudulent bills. *See* ECF No. 1-4, and ECF No. 1-5.[1]  Of these 118 individuals, the defendants produced records pertaining to just nine (9) (plus a tenth patient who was not identified by Liberty Mutual's Complaint).  *See* Exhibit I.  To put this in context, the defendants stand accused of committing fraud with respect to well over 100 patients.  After five (5) months, two (2) discovery extensions, a motion to compel, imposition of monetary sanctions, and a Court Order compelling them to "fully" respond to discovery, they have only produced records for 7.6% of those patients.

The few patient records the defendants did produce are also woefully incomplete. [2]  Several of the files include only purported assignments of benefits

---

[1] Liberty Mutual's Complaint identifies the patients by claim number, which the defendants necessarily have as they could not have submitted any bills without this identifying information.  Nevertheless, Liberty Mutual also served the defendants with a full list of complete names of each of these patients with its initial disclosures on October 20, 2020.  The defendants confirmed during the hearing on February 23, 2021 that they have this list of full patient names.  *See* ECF No. 62, PageID 1269.  Thus, there can be no dispute that the defendants are well aware of the 118 specific patients for whom they were required to produce complete files.

[2] Liberty Mutual has not attached these incomplete records as exhibits because they contain personal health information of the patients.  If the Court wishes to review them, Liberty Mutual will promptly provide them for *in-camera* review or file them a supplemental exhibit under seal.

signed by the patients and do not actually include medical records at all.  *See* Exhibit

I.  Other files contain laboratory reports purporting to document test results, but omit

the prescriptions and requisition forms that were allegedly written by the co-

defendants and RICO enterprises identified by Liberty Mutual's Complaint, which

are absolutely relevant to the conspiracy in which the defendants' participated.  Id.

In other words, despite an enormous amount of effort by Liberty Mutual to obtain

basic medical record discovery in this healthcare fraud case, it has virtually none of

the medical files for the patients at issue in this action.

### b.  Emails and Other Communications

The only communications that the defendants have produced are ten (10)

emails between Advanced Central and a vendor, JM Scientific, concerning the

purchase of supplies.  *See* Exhibit I.  All of the communications produced by the

defendants were made in January and February of 2021, with the earliest

communication dated January 27, 2021, which was more than three (3) months after

Liberty Mutual served its discovery requests and two (2) weeks after it filed its

motion to compel.  Id.  This means that the defendants either did not make an effort

to search for and produce communications made during the vast majority of the time

period at issue, or that they intentionally failed to preserve or destroyed those

communications.  This failure to preserve or produce documents encompasses more

than three (3) months' worth of communications since Liberty Mutual's discovery

was served, and more than six (6) months' worth of communications since Liberty Mutual's Complaint was filed (on July 21, 2020.) The defendants cannot credibly argue that they were unaware of their duty to preserve evidence after they were sued for fraud.[3]

Liberty Mutual requested communications on eleven (11) specific subjects from each defendant. *See* Exhibits B and D, request nos. 13, 14, 19, 21, 23, 24, 25, 26, 27, 31, and 36. Only defendant Advanced Central produced any communications at all, and its documents pertain to only one (1) of those eleven (11) categories, and span only a six (6)-week period from January 27, 2021 to March 10, 2021. *See* Exhibit I.

Advanced Central stated that it would produce communications between itself and ten (10) specific entities and individuals during the relevant time period, but it produced no such documents other than the transmittal of some invoices by JM Scientific. *See* Exhibit F, request no. 24; Exhibit I. Further, even though it did not actually produce communications, Advanced Central's response unilaterally and impermissibly purports to limit the scope of its production to communications "with respect to Liberty Mutual Insured's treatment." Id. Liberty Mutual's requests seek

---

[3] The defendants routinely file actions against Liberty Mutual in Michigan state courts seeking payment for the same types of bills at issue in this action. Accordingly, there was never a time during the period at issue in this action where the defendants did not have an obligation to preserve the type of evidence sought by Liberty Mutual's discovery.

relevant materials about Advanced Central's business practices that are not specific to Liberty Mutual patients, and this attempted limitation, particularly at this late juncture, is completely inappropriate.[4]

In response to the remainder of Liberty Mutual's requests seeking communications, the defendants claim not to possess any. *See, e.g.,* Exhibit F, request no. 23. The defendants have made no effort to explain what steps they have taken to search emails and other electronic records to locate responsive communications and, as discussed above, it is clear that either no actual search was conducted or that documents were deleted or destroyed. There are no entries on the defendants' privilege log pertaining to electronic communications.[5] *See* Exhibit I.

The defendants' assertion that they have no responsive communications, other than ten (10) emails with a single vendor, is plainly false. Discovery received from

---

[4] As just one example of how Advanced Central's attempted limitation will deprive Liberty Mutual of the evidence to which it is entitled and has spent more than five (5) months trying to obtain, request for production 24 seeks communications between Advanced Central and entities that set its prices, prepared its bills, and purchased its accounts receivable. The practices that were used and implemented vis-à-vis these third parties would not have been specific to Liberty Mutual insureds, but rather relate to Advanced Central's business practices generally and were incidentally applied to Liberty Mutual insureds. There is no reason to believe that any specific Liberty Mutual insured would be expressly identified in these communications despite their clear and significant relevance to the scheme alleged by the Complaint.

[5] In fact, the only entries on the defendants' privilege log refer to redacted social security numbers.

third parties in this action provides evidence that the defendants do have responsive documents that they have failed to produce.  For example, Southeast Michigan Surgical Hospital, LLC ("Michigan Surgical Hospital") produced an agreement with Advanced Central for lab services that discusses Advanced Central's required requisition forms, its billing procedures, and an online database of patient results that Advanced Central was required to update, meaning that it must have transmitted information to this client electronically.  *See* Exhibit J.  Michigan Surgical Hospital also produced an email confirming that Advanced Central electronically stores and transmits test results: "Michigan Surgical Hospital will need results uploaded onto the Advanced Central portal within 48 hours of the samples being delivered to the lab in order for MSH staff to deliver the results to the Quality Behavioral Health clinic."  *See* Exhibit K.  Advanced Central has not produced any of this electronically-stored information.

Moreover, Advanced Central answered interrogatory 20, which asked for identification of every email address used to conduct its business, by providing only a single email address for the entire lab: "acl@advancedcentrallab.com."  *See* Exhibit E.  But the email referenced above (and many others) obtained from Michigan Surgical Hospital show Anwar Baker[6] conducting business for Advanced

---

[6] Anwar Baker is identified by the defendants as their "toxicologist" and "general supervisor."  *See* Exhibits E and G, interrogatory number 2.  Anwar Baker is also

Central using the address "anwarbaker@yahoo.com." *See* Exhibit K. Liberty Mutual has also obtained email usage records from Google showing that Advanced Central frequently used the email address "toxicologycentral@gmail.com" *See* Exhibit L.[7]

When one combines the fact that the defendants have produced records for less than 8% of the patients at issue in this case, and asserted that they have zero responsive documents on numerous relevant subjects that subpoena responses in this case confirm exist, it is obvious that the defendants are not taking their discovery responsibilities seriously. Indeed, this conclusion is the one most favorable to the defendants. The only alternative explanation is that they truly have no records at all pertaining to 92% of the patients for whom they are accused of submitting fraudulent

---

the individual who apparently was supposed to sign the defendants' interrogatory responses but did not.

[7] Exhibit L is an excerpt of an 848-page document produced by Google in response to Liberty Mutual's subpoena. By way of example, on page 1 (Bates No. 000004) of Exhibit L, the first full entry dated January 5, 2016 shows an email from David Hakki to toxicologycentral@gmail.com along with owenmouneer@yahoo.com and anwarbaker@yahoo.com. Mouneer Owen and Anwar Baker are the two principals identified in the defendants' answers to interrogatories. Mouneer Owen is listed as the "General Manager" of both defendants, and Anwar Baker is listed as the "Toxicologist, General Supervisor" for both defendants. *See* Exhibits E and G, interrogatory no. 2. Other excerpted pages included in Exhibit L show that the toxicologycentral@gmail.com address was used routinely over a long period of time to conduct the business of Advanced Central.

charges, because they have concealed, deleted, or destroyed nearly all of their records and communications.

### c.    Records Pertaining to Laboratory Equipment

Aside from the aforementioned emails with JM Scientific, the defendants have failed to produce documents in response to Liberty Mutual's requests for production relating to the purchase or lease of the laboratory equipment that they purportedly used to generate the bills at issue in this action. *See* Exhibit I.  This information is essential because Liberty Mutual needs to obtain discovery on what these machines were, how they were used, and how they were maintained, in order to confirm whether any of the bills from the defendants described services that actually occurred at all.  This is particularly important because Liberty Mutual has obtained documents from one of the manufacturers of this equipment, Shimadzu Scientific Instruments, Inc. ("Shimadzu"), evidencing that the defendants did not know how to use the equipment and failed to perform required routine maintenance that calls into question whether any of the purported results documented by the laboratory reports and other records used to induce payment from Liberty Mutual could have been truthful.  *See* Exhibit M.  Examples of reports in the documents obtained from third parties that evidence deep and extensive problems for which documents must exist (or did exist prior to destruction) include:

- "This is one of the most problematic labs I have encountered.  The user (Anwar) is a bright fellow without any prior LCMS background and the lab is

focusing on him to perform the validation.  They hired John Wright (former AB specialist) to consult and he made promises about the validation timeframe that he didn't keep.  Now fingers are pointed at us because they do not know what to do and/or how to do it for the system to be validated.  Mike, Ryan, Caleb, Phil, and myself have all tried to help out as much as possible but they really just need to hire someone that knows what they are doing."

- "Customer and consultant continue to struggle with method development. The consultant has been relieved of duties at this point.  The customer has zero LCMS experience and requires a lot of training. . . .  The customer is not grasping the importance of many basic principles."

- "I was able to determine, even after all the training I have given him, he still does not understand the basics of LCMS and reading peaks."

- "The operator at the site is continuously struggling with the instrument and software.  I have been on site numerous times and trained them on the very basics multiple times."

- "A PM has not been performed on the LC in almost 4 years and customer claimed that he only changed the seals himself in that time. . . .  Turned out the data processing event numbers did not match the acquisition method for some of the compounds. . . .  His method needs a lot of work.  Customer does not understand method development."

Id.  The defendants have not produced a single record pertaining to training, their attempts at maintenance, communications with suppliers and manufacturers, or retention of specialists to attempt to address the significant problems that are clearly relevant to the bills at issue in this action.  *See* Exhibit I.

## d.    Contracts

The defendants failed to produce any documents relating to their contractual and financial relationships with co-defendants, co-conspirators, and third parties, even though such documents clearly exist.  This action alleges a conspiracy to

15

commit fraud and violations of the federal RICO Act that makes evidence pertaining to the relationships between Advanced Central, Future Diagnostics, and other defendants and associated third parties extremely relevant. *See* ECF No. 1, ¶¶ 468 – 649. The defendants' financial relationships with providers who refer patients to them, their lenders, their billers, and purchasers of their accounts receivable are also relevant to understanding the (un)reasonableness of the defendants' charges, the (lack of) medical necessity of their purported services, and the defendants' motives to commit fraud and how they profited from it.

By way of example, Liberty Mutual requested contracts that Advanced Central has with any referring providers. *See* Exhibits B and D, request no. 22. Advanced Central replied that it would provide any such documents, but provided nothing. *See* Exhibits F and I. However, one of Advanced Central's referring providers, Michigan Surgical Hospital, responded to a subpoena by providing the contract it has with Advanced Central, which confirms that the exact type of documents sought by Liberty Mutual's requests actually exist and that the defendants are intentionally withholding their production. *See* Exhibit J.

Liberty Mutual also asked for documents showing any contractual or financial relationship between Advanced Central and (among others) accounts receivable purchasers Velocity MRS – Fund IV and Velocity MRS – Fund V. Advanced Central claimed to have none. *See* Exhibit F, request no. 33. UCC filings reveal

that these two entities were recently secured creditors of Advanced Central, which is a relationship that requires a written instrument.  *See* Exhibit N.

### e.     Accounting, Banking, and Corporate Documents

Judge Whalen's Order granting Liberty Mutual's motion to compel stated that "[f]inancial and other documents that are in the possession of Defendants' accountants are considered to be in Defendants' constructive possession, and will be obtained and produced by the Defendants themselves."  *See* ECF No. 60.  The defendants disregarded this order and failed to produce records in their accountants' possession. They also directed Liberty Mutual to pursue the defendants' accountants for relevant information and documents, which the Court expressly told them not to do. *See* Exhibit E, interrogatory no. 19 ("Sapphire Accounting & Tax Solutions has all this information and Advanced Central Laboratory is willing to sign authorizations for access").

The defendants gave similar responses with respect to banking records.  *See* Exhibit F, request no. 29 ("Advanced Central Bank [sic] maintained two bank accounts: one at Fifth Third Bank and one at Huntington Bank.  Fifth Third Bank is currently closed and has been for a while.  Advanced Central Laboratory is willing to sign authorizations to access/obtain such documents").  With respect to their basic corporate documents such as operating agreements, by-laws, resolution, transfers of ownership, and the like, the defendants claimed during the hearing on Liberty

Mutual's motion to compel that "[m]any of the corporate documents are not housed in the possession of the defendants. They are held with the accounting office." *See* ECF No. 62, PageID 1271. Again, Judge Whalen expressly told the defendants they cannot avoid producing documents by claiming they are in the possession of the defendants' accountants. The defendants still have not produced any of these documents.

### 3.   Incomplete and Evasive Responses

In addition to remaining unsigned, the interrogatory answers served by the defendants are clearly incomplete and evasive. For example, Liberty Mutual's interrogatory no. 2 to each defendant seeks the identity of the owners of each laboratory. *See* Exhibits A and C. The defendants did not actually provide this information, and instead provided several purported job titles for Mouneer Owen and Anwar Baker. *See* Exhibits E and G. The defendants' bank records evidence that there are additional owners of the laboratories that the defendants are attempting to conceal in this litigation. These bank records document routine distributions from Advanced Central to Mouneer Owen and Anwar Baker, and every time such distributions were made, nearly identical amounts were also distributed to an entity called "Gandy Imports." *See* Exhibit O. Reference to Gandy Imports is completely absent from the defendants' discovery responses and they did not produce a single document pertaining to this obviously significant relationship. *See* Exhibit I.

Liberty Mutual also asked the defendants to produce their marketing materials, advertisements, and any agreements they had with other entities to perform marketing on their behalf. *See* Exhibits B and D, request nos. 8 and 9. Both defendants replied that each lab "conducts its own advertising through business cards and business-to-business marketing to advertise its lab." *See* Exhibits F and H, request nos. 8 and 9. The defendants' own bank records again confirm that these responses are incomplete, evasive, and false. Advanced Central paid many thousands of dollars each month to numerous entities for "Marketing," including entities called AB Management Group, LLC, Colombo Management & Marketing LLC, World Wide Toxicology LLC, Empire Medical Billing, LLC, and Four Care Source Management & Marketing LLC.[8] *See* Exhibit P. The last two of these entities are owned by an individual named Muna Afan, who is named as a defendant in a separate RICO action in the Eastern District of Michigan. Apart from the defendants' distributions to Anwar Baker, Mouneer Owen, and Gandy Imports, these monthly "marketing" payments are the defendants' most significant expenses and yet they have not produced a single document related thereto. *See* Exhibit I.

---

[8] The last two of these entities are owned by an individual named Muna Afan, who is named as a defendant in a separate RICO action in the Eastern District of Michigan. *See* Allstate Insurance Company, *et al.* v. Star Pain Management & Rehab LLC, *et al.*, 20-cv-12879-SFC-KGA (E.D. Mich. 2020)

**C.** **SUBSTANTIAL SANCTIONS, INCLUDING THE ENTRY OF DEFAULT JUDGMENT AGAINST THE DEFENDANTS, ARE APPROPRIATE IN LIGHT OF THE REPEATED, WILLFUL VIOLATIONS OF THIS COURT'S ORDERS**

Given the repeated and intentional violations of this Court's Orders, this Court should impose strong sanctions, including the entry of default judgment, against the defendants. "Among the variety of discovery sanctions available in a district court's 'arsenal,' the entry of a default judgment against a defendant or an Order of dismissal against a plaintiff are the court's 'strongest weapon[s].'" Annabel v. Erichsen, 2019 U.S. Dist. LEXIS 68626, *2 (E.D. Mich. March 15, 2019), quoting Grange Mut. Gas. Co. v. Mack, 270 Fed. Appx. 372, 376 (6th Cir. 2008). "[T]he district court does not abuse its discretion in entering a default judgment where a 'party has the ability to comply with a discovery Order and does not.'" Id. at *4, quoting Stooksbury v. Ross, 528 Fed. Appx. 547, 552 (6th Cir. 2013).

"A court must consider four factors when determining whether a plaintiff's complaint should be dismissed pursuant to Rule 37: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the party's adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." Id., citing Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990). "Although no one factor is dispositive, dismissal or default

judgment is proper if the record demonstrates delay or contumacious conduct." Id.,

citing United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002).

The facts discussed above call for entry of default judgment against the

defendants.  The defendants' history of repeatedly ignoring this Court's Orders

demonstrate that their actions are willful, intentional, and done in bad faith.  The

defendants' complete failure to produce any documents by the Court-Ordered

deadline was their first willful disregard of both the Court and their discovery

obligations.  Judge Whalen imposed monetary sanctions on the defendants and

ordered them to "fully" respond to discovery or face further sanctions, "which may

include entry of default." See ECF No. 60.  Despite this clear Order and warning,

the defendants produced less than 8% of the patient files at issue, and almost none

of the other discovery requested including documents that must exist.  They also

disregarded the Court's Order by asserting objections they were forbidden to make

and failing to obtain documents in their constructive possession that are held by their

agents. In fact, the defendants' representative, Anwar Baker, has not signed any of

the answers to interrogatories or responses to requests for documents even though

that very issue was raised in the motion to compel and the Court ordered that the

defendants sign their responses. See ECF No. 62, PageID 1276 ("I will direct that

the request for discovery, both the document requests and the Interrogatories -- I

don't know why the Interrogatories aren't signed.  They need to be signed, you

know.  So those will be produced both within 14 days of today's date").  Defendants who cannot be bothered to sign documents in the span of more than two weeks after being sanctioned and expressly ordered to do so are not showing respect for the rules of discovery or for this Court.  This is the sort of "contumacious conduct" that warrants default.  *See* Annabel, 2019 U.S. Dist. LEXIS 68626, *2 (E.D. Mich. March 15, 2019), citing Reves, 307 F.3d at 458.

Second, there can be no question that Liberty Mutual has been severely prejudiced by the defendants' failure to respond to discovery.  Liberty Mutual served its discovery requests five (5) months ago, and the defendants' continued failure to produce the responsive documents requested by Liberty Mutual makes it impossible for Liberty Mutual to move forward with prosecuting its case, including preventing it from conducting additional third party discovery, consulting with its experts, and identifying deponents and scheduling deposition testimony.  Not even the explicit warning of a default judgment was enough to motivate the defendants to make a passable attempt at producing documents or even to sign their written responses.

For all of these reasons, the Court should find that the defendants are in contempt of the Court's unambiguous Orders and enter default judgment against them as sanctions for their conduct.  Indeed, such an order is both warranted by the facts of this case and consistent with other similar cases.  *See, e.g.,* Annabel, 2019 U.S. Dist. LEXIS 68626 at *8 -*11 (in which the court recommended entry of default

judgment where the defendant disregarded multiple court orders and failed to provide the plaintiff with revised discovery responses as ordered, and noting that the court "has little trouble concluding that [the defendant's] behavior in this case is due to willfulness or bad faith and amounts to contumacious conduct as defined by the Sixth Circuit"); <u>Berry v. Ocwen Loan Servicing</u>, 2020 U.S. Dist. LEXIS 40353, *3-*5 (W.D. Tenn. Mar. 9, 2020) (entering case-terminating sanctions against a litigant who failed to produce documents in response to discovery requests six (6) months after such requests were served, and finding that warnings of dismissal and award of costs were ineffective at correcting the litigant's conduct); <u>Laues-Gholston v. Mercedes-Benz Fin. Servs. USA, LLC</u>, 2014 U.S. Dist. LEXIS 184021 (E.D. Mich. Nov. 28, 2014) (case-terminating sanctions entered as a result of discovery violations even though the litigant was *pro se*, because his conduct was obstructionist and in bad faith).

In addition, the Court should impose significant monetary sanctions against the defendants, including awarding Liberty Mutual its costs and attorney's fees incurred as a result of its ongoing efforts to obtain the discovery to which it is indisputably entitled pursuant to Fed. R. Civ. P. 37(b)(2).  *See* <u>Annabel</u>, 2019 U.S. Dist. LEXIS 68626 at *3 - *4 ("[a] court may also, in addition to or as an alternative to [the entry of default judgment] direct 'the disobedient party, the attorney advising

that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure' to comply with the court Order"), quoting Fed. R. Civ. P. 37(b)(2)(C).

## IV.   **CONCLUSION**

Liberty Mutual has made every reasonable effort to obtain the discovery to which it is entitled, and this Court has given sufficient and significant warning to the defendants that they must fully respond to Liberty Mutual's discovery and to produce documents.  Rather than comply, the defendants have ignored and violated the Court's Orders, seriously prejudicing Liberty Mutual's efforts to prosecute this case.  For these reasons, this Court should find the defendants in contempt of court and enter sanctions, including the entry of default judgment, against them.

[SIGNATURE PAGE FOLLOWS]

Respectfully Submitted,

SMITH & BRINK

*/s/ Andrew H. DeNinno*

_____
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
Andrew H. DeNinno
adeninno@smithbrink.com
William G. Potter
wpotter@smithbrink.com
350 Granite Street, Suite 2204
Braintree, MA  02184
617-770-2214 (phone)

38777 Six Mile Road, Suite 314
Livonia, MI  48152

*Attorneys for Plaintiffs*

Dated:  March 26, 2021

## **<u>CERTIFICATE OF SERVICE</u>**

I, Andrew H. DeNinno, counsel for Plaintiffs, hereby certify that on March

26, 2021, I electronically filed the foregoing papers with the Clerk of the Court using

the ECF system, which will send notification of such filing to all counsel of record.

SMITH & BRINK

*/s/ Andrew H. DeNinno*
_____

Andrew H. DeNinno
adeninno@smithbrink.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214