# EXHIBIT J

## AGREEMENT FOR REFERENCE CLINICAL LABORATORY SERVICES

THIS AGREEMENT FOR REFERENCE CLINICAL LABORATORY SERVICES (the "Agreement"), is entered into this _2nd_ day of _December_ , 2019, by and between Southeast Michigan Surgical Hospital d/b/a/ Insight Surgical Hospital, ("Client") whose address is 21230 Dequindre Road, Warren, Michigan 48091, and _Advanced Central Lab, LLC_ whose address is _4619 Allen Rd Allen park Mi_ ("Laboratory").

RECITALS _48101_

WHEREAS, Client is surgical hospital having as its purpose the provision of quality health care services, including laboratory services to patients of hospital; and

WHEREAS, Laboratory is engaged in the business of providing reference clinical laboratory services and pursuant to the terms and conditions set forth herein, desires to provide reference clinical laboratory services to patients of Client; and

WHEREAS, Client is desirous of contracting with Laboratory to arrange for the provision of such reference clinical laboratory services to its patients.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, Client and Laboratory mutually agree as follows:

1. DUTIES AND OBLIGATIONS

A.   Provision of Services. Laboratory agrees to perform reference clinical laboratory testing services ("Laboratory Services") upon Client's request, which Laboratory Services shall include the following, and shall be subject to the obligations of each Party as set forth in this Agreement and all Exhibits and Appendixes attached hereto:

> (i)     Laboratory Services shall include, but are not limited to, microbiology, virology, mycology, serology, chemistry, cytology, histology, urinalysis, hematology, and immunology testing. Laboratory Services shall be provided twenty-four (24) hours per day, seven (7) days per week in accordance with (a) procedures that are consistent with community practice standards, the Healthcare Facilities Accreditation Program, the College of American Pathologists ("CAP") and the Clinical Laboratory Improvement Act ("CLIA"); (b) all applicable federal, state, and local governmental statutes, rules and regulations; and (c) all applicable standards and requirements of agencies and/or entities responsible for administering, regulating, certifying or accrediting clinical laboratories such as the Joint Commission, CAP, and the Michigan Department of Community Health. Laboratory agrees to provide Laboratory Services for the patients of Client in accordance with orders written by physicians and other qualified practitioners.  No more frequently that one time per year, Laboratory will provide copies or other documentation of licensure, certification and accreditation upon request.

> (ii)     Laboratory shall provide, at no additional charge to Client, routine supplies necessary for the collection, preparation and preservation of specimens to be

Southeast Michigan Surgical Hospital 000009

ISH 0009

submitted to Laboratory for testing pursuant to this Agreement. Laboratory shall, upon the request of Client, and consistent with the limitations imposed by the Physician Self- Referral Law and regulations adopted thereunder, deliver specimen collection supplies to Client within a reasonable time after Client's request.

(iii)     Laboratory shall provide, at no additional charge to Client, the following equipment: (i) computer with flat screen monitor; (ii) barcode printer; (iii) barcode wand for computer; (iv) laser printer; and (v) appropriate software. Such equipment shall provide Client with the ability to order tests, generate barcodes, create packing lists and print laboratory results. Client further agrees that Laboratory may remove such equipment in the event that Client is found to have violated the provisions of this paragraph relating to private use of the equipment provided. Client agrees to abide by the terms and conditions governing the use of computer equipment supplied by Laboratory under this Agreement as set forth on Appendix "B" attached hereto and made a part of the Agreement.

(iv)     Laboratory is responsible for the courier pickup of routine specimens from Client collection site(s) and for the transport of all specimens to Laboratory (courier shall be equipped with proper storage containers to maintain specimen integrity). This courier transport shall be provided at least once each day Monday – Saturday, except commonly recognized holidays. Courier pickups shall not be required in the event of dangerously inclement weather conditions. All courier service personnel shall be blood borne pathogen trained and equipped.

(v)     Laboratory's laboratory staff shall be available to consult with Client by telephone 24 hours a day to discuss, as necessary, Laboratory's laboratory procedures and to explain test results.

(vi)     Laboratory agrees to provide on-site training for Client collection site personnel. Such on-site training shall include instruction on the use of Laboratory's laboratory equipment and supplies, the computer system and Laboratory's Laboratory Online Test Directory.

(vii)     A Laboratory representative will solve clinical and technical problems in real time as they occur, by direct connect via cell phone or pager. The representative shall provide feedback to the Client within twenty-four (24) hours of a nonclinical or technical complaint being submitted. Clinical related issues will be referred to the Laboratory Medical Director. Technical, clerical, and billing issues will be referred to the Managers and Coordinators. Once the problem is addressed, the Client will be contacted by phone or in writing with a resolution or explanation for the problem. All specimen related errors that are identified by Laboratory will be logged into an error database and reported to the Client. This database may be used to generate reports for Laboratory's and Client's Quality Assurance program.

2.     PROFESSIONAL QUALIFICATIONS All Laboratory personnel performing Laboratory Services shall be qualified, experienced, competent, trained and appropriately licensed, certified, and/or registered in the State of Michigan. All Laboratory Services which require professional

Southeast Michigan Surgical Hospital 000010

ISH 0010

staff to perform them, shall be performed by appropriately credentialed members of Laboratory's medical staff.

3.  TEST ORDERS AND FORMS  For each laboratory test to be performed by Laboratory hereunder, Client shall complete a laboratory requisition form which shall include the patient's full name, diagnosis, patient identification data, symptom(s), and ICD-10-CM code associated with the test(s) being ordered.  Requisitions for Part (A) accounts are not required when information is submitted via the Laboratory information system.  All part (B) insurances require the original physician order to be sent to Laboratory.  Verbal orders must be authenticated in accordance with Laboratory's policies and procedures.  Written confirmation of verbal orders must be provided within twenty-four (24) hours.  Client agrees to follow test-specific collection protocols when collecting specimens.

4.  LABORATORY REPORTS  Laboratory shall deliver a copy of the original laboratory report within forty-eight (48) hours of the test. The laboratory test report shall include at a minimum: patient's name, date of test, test name, test result, normal values, laboratory name and address and such other information as may be mutually agreed upon by the parties. Laboratory shall report all results to Client and/or the patient's attending physician.  Laboratory agrees to make all records containing information about Client's patients available to Client for review and copying upon request.

5.  BILLING AND COMPENSATION

A.  Procedure for Billing Client.  Laboratory will bill Client for Laboratory Services provided to registered Client inpatients (Part A type billing).  Laboratory will only bill Client for Laboratory Services provided to registered Client outpatients if so requested in writing by Client. Laboratory will bill Client monthly, and Client agrees to reimburse Laboratory at the rates set forth in Appendix A, attached hereto and incorporated herein by reference.  The invoices submitted by Laboratory to Client shall include the following information: (i) name and address of Laboratory and Client; and (ii) the name of each patient to whom services were provided, the date each service was provided, the accepted nomenclature of the services provided, and the total charge for services. Laboratory shall mail all invoices by the 10th business day of the month to Client. Client shall deliver to Laboratory payment in full for each invoice within thirty (30) days after receipt of the invoice.

B.  Procedure for Billing Other Payors.  For JVHL covered insurances, Laboratory will bill the patients and/or the patients' third-party payor for Laboratory Services performed by Laboratory. Client and Laboratory will work in good faith to reduce reimbursement denials by providing adequate documentation, including proper coding for the medical necessity of laboratory services. In the event that Laboratory fails to receive payment from a third party payor, Laboratory will look to the patient and not Client for payment and Laboratory shall have no right of recovery against Client.

C.  Services Fee.  Client agrees to pay Laboratory $100.00 fee each test performed, so long as the fee is within the fair market value of payment for the test.  Laboratory shall mail all invoices by the 10th business day of the month to Client.

Southeast Michigan Surgical Hospital 000011

ISH 0011

6.    TERM AND TERMINATION

A.    Term. The term of this Agreement shall commence on ~~December 2ⁿᵈ 2019~~ and will continue through ~~December 2ⁿᵈ 2020~~ unless terminated sooner as provided for below. The parties may, through an addendum to this Agreement made in writing and executed by both parties, extend this Agreement for up to three (3) additional one (1) year terms on the same terms and conditions; provided however, that Laboratory may elect to increase pricing for each renewal term by an amount not to exceed five percent (2%) per renewal term.

B.    Termination. This Agreement may be terminated prior to its expiration as follows:

(i)    Upon mutual consent by Laboratory and Client, which consent shall be evidenced by a written agreement of termination signed by both parties.

(ii)    Either party may terminate this Agreement at any time without cause and without penalty, upon sixty (60) days prior written notice.

(iii)    If either party breaches this Agreement and fails to correct the breach to reasonable satisfaction of the injured party within ten (10) business days following written notice from the injured party specifying the breach, then the injured party may terminate this Agreement, giving written notice of termination to the other party; provided however, if such breach is of such character as to reasonably require more than thirty (30) days to cure, then this Agreement may be terminated if the breaching party fails to use reasonable diligence in curing same within such period.

(iv)    If Laboratory fails to provide Laboratory Services that are reasonably satisfactory to the Client and its medical staff, and fails to correct any problem to the satisfaction of the Client, within thirty (30) days of receiving written notice of the problem, the Client may terminate this Agreement by giving written notice of termination to Laboratory; provided, however, if the problem is of such character as to reasonably require more than thirty (30) days to cure, then this Agreement may be terminated by the Client if Laboratory fails to use reasonable diligence in curing the problem within such period.

(v)    This Agreement may be terminated at any time by either party (a) upon receipt of information indicating that either party has been temporarily or permanently debarred or excluded from, or is otherwise ineligible for participation in Medicare, Medicaid or any other federal or state health care program; (b) upon either party's loss of licensure, accreditation or certification to perform laboratory services hereunder; or (c) upon the filing of voluntary or involuntary bankruptcy by either Laboratory or Client.

7.    EFFECT OF TERMINATION OR EXPIRATION Neither party shall have any further obligation hereunder, except for obligations accruing prior to the date of termination or as otherwise may be set forth in this Agreement; provided that Client shall return all equipment and

Southeast Michigan Surgical Hospital 000012

ISH 0012

supplies provided to it by Laboratory during the term of this Agreement, including, but not limited to the computer equipment identified in paragraph 1.A.(iii), above, within ten (10) days following the termination or expiration of this Agreement.

8. EXCLUDED PROVIDERS Laboratory and Client each individually hereby represent and warrant that neither it nor any of its employees has been, nor are about to be debarred, excluded, or otherwise ruled ineligible from participation in any federal or state governmental health care programs, including Medicare and Medicaid, or any other third party payor programs.

9. NON-EXCLUSIVE ARRANGEMENT Nothing in this Agreement shall be construed to preclude either party from contracting with any other individual or entity for Laboratory Services, it being understood and agreed by and between the parties that the services are being provided by Laboratory hereunder on a non-exclusive basis.

10. INSURANCE

A. Client. Client shall at its sole cost and expense at all times during the term of this Agreement, obtain and maintain comprehensive general and professional liability insurance in the minimum amount of One Million Dollars ($1,000,000) per occurrence, and Three Million Dollars ($3,000,000) in the aggregate. Client shall provide proof of insurance upon request by Laboratory. Client shall provide Laboratory with not less than thirty (30) days advance written notice of any cancellation, reduction or material change in the insurance required herein. Client may insure all or part of its obligations through a program of self-insurance. Anything contained in this Agreement to the contrary notwithstanding, the failure of Client to meet the requirements of this Section 11 shall be cause for immediate termination of this Agreement by Laboratory.

B. Laboratory. Laboratory shall at its sole cost and expense at all times during the term of this Agreement, obtain and maintain comprehensive general and professional liability insurance in the minimum amount of One Million Dollars ($1,000,000) per occurrence, and Three Million Dollars ($3,000,000) in the aggregate. Laboratory shall provide proof of insurance upon request by Client. Laboratory shall provide Client with not less than thirty (30) days advance written notice of any cancellation, reduction or material change in the insurance required herein. Laboratory may insure all, or part of its obligations through a program of self-insurance. Anything contained in this Agreement to the contrary notwithstanding, the failure of Laboratory to meet the requirements of this Section 11 shall be cause for immediate termination of this Agreement by Client.

11. INDEMNIFICATION

A. Client. Client shall indemnify, defend and hold Laboratory harmless from and against any and all claims, demands, liabilities, losses, damages, costs and expenses, including reasonable attorney's fees, directly resulting from any negligent or willful act or omission of Client, its agents or employees, or the failure by Client, its agents or employees to perform or satisfy its obligations and covenants under this Agreement. This provision shall survive termination or expiration of this Agreement.

B. Laboratory. Laboratory shall indemnify, defend and hold Client harmless from and against any and all claims, demands, liabilities, losses, damages, costs and expenses, including reasonable attorney's fees, directly resulting from any negligent or willful act or

Southeast Michigan Surgical Hospital 000013

ISH 0013

omission of Laboratory, its agents or employees, or the failure by Laboratory, its agents or employees to perform or satisfy its obligations and covenants under this Agreement. This provision shall survive termination or expiration of this Agreement.

12.    INDEPENDENT CONTRACTOR RELATIONSHIP    In performing the Laboratory Services herein specified, Laboratory is acting as an independent contractor, and neither Laboratory nor any of its employees shall be considered employees of Client. In no event shall this Agreement be construed as establishing a partnership, joint venture or similar relationship between the parties hereto, and nothing contained herein shall be construed to authorize either party to act as an agent for the other.  Laboratory shall be liable for its own debts, obligations, acts and omissions, including, with respect to all Laboratory employees and contractors, the payment of all applicable salaries, wages, pensions, workers' compensation insurance, and all required withholdings, social security and other taxes and benefits. Laboratory shall indemnify and hold harmless Client, its directors, officers, employees, and agents, from and against any and all claims, liabilities, demands and suits arising, directly or indirectly, out of Laboratory's breach of this Section 12.

13.    MISCELLANEOUS

    A.    Access to Books and Records.  If this Agreement is determined to be an Agreement within the purview of §1861(v)(1)(I) of the Social Security Act (§ 952 of the Omnibus Reconciliation Act of 1980) and the regulations promulgated in implementation thereof at 42 CFR Part 420, then during this Agreement and for a period of four (4) years thereafter, Laboratory shall make available to Client, the Comptroller General of the United States, the Department of Health and Human Clinical Services ("HHS") and their duly authorized representatives, access to the books, documents and records of Laboratory, and such other information as may be required by the Comptroller General or Secretary of HHS to verify the nature and extent of the costs of Laboratory Services provided by Laboratory.  Laboratory further agrees that in the event Laboratory carries out any of the duties under this Agreement through a subcontract, with a value of cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, such a contract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to such subcontract, the subcontractor shall make available, upon written request to the Secretary of the United States Department of Health and Human Services, or upon request to the Comptroller General of the United States General Accounting Office, or any of their duly authorized representatives, a copy of such subcontract and such books, documents and records of such organization as are necessary to verify the nature and extent of such costs.

    B.    Cooperation.  Laboratory shall take reasonable actions within its authority and power which are appropriate and necessary to ensure that its employees and/or contractors providing Laboratory Services pursuant to the terms of this Agreement work cooperatively with Client in order to provide high quality Laboratory Services.

    B.    Amendments.  This Agreement may be amended only by an instrument in writing signed by the parties hereto.

    C.    Assignment.  Assignments of this Agreement or the rights or obligations hereunder shall be invalid without the specific written consent of the other party herein.

Southeast Michigan Surgical Hospital 000014

ISH 0014

D.    Compliance with Laws and Regulations. It is the intention of Laboratory and Client to fully comply with all applicable laws and regulations in performing their respective duties and responsibilities under this Agreement. The parties believe that this Agreement complies with all applicable statutes and regulations, specifically including, but not limited to, the Medicare/Medicaid Fraud and Abuse, Anti-Kickback and the Stark laws. If at any time this Agreement is found to violate any applicable statute or regulation, or if either party has a reasonable belief that this Agreement creates a material risk of violating any applicable statute or regulation, or of jeopardizing either party's tax exemption, then such party shall provide written notice along with an opinion of counsel to the other party. If, within forty-five (45) days of either party first providing written notice to the other of the need to amend the Agreement, the parties, acting in good faith, are: i) unable to mutually agree upon and make amendments or alterations to the Agreement to meet the requirements in question, or ii) alternatively, the parties determine in good faith that amendments or alterations to the requirements are not feasible, then either party may terminate the Agreement. Nothing in this Agreement shall be construed to require Laboratory or Client to make referrals of patients to one another. No payment is made under this Agreement in return for the referral of patients.

E.    Confidentiality of Information. Neither Laboratory nor Client shall disclose any privileged or confidential information of the other which Laboratory or Client may obtain or learn as a result of this Agreement, without the prior written consent of the other party, except: (i) as may be required by valid subpoena, or (ii) in connection with audits conducted by third party payors, or (iii) as may be otherwise expressly authorized herein. Without limiting the generality of the foregoing, Laboratory and Client each shall maintain the confidentiality of all medical records, all business and financial records and information, and the practices of the other to which either may have access or knowledge.

F.    Entire Agreement. This Agreement, together with all Exhibits and Appendixes attached hereto and thereto (collectively the "Agreement"), constitutes the entire agreement of the parties concerning the subject matter hereof. Further, this Agreement terminates and supersedes all prior negotiations, oral understandings, resolutions, statement of intent, course of dealings and agreements.

G.    Governing Law. This Agreement is made pursuant to, and shall be governed by the laws and decisions of the State of Michigan.

H.    Execution. This Agreement may be executed in any number of counterparts, each of which shall be treated as an original but all of which, collectively, shall constitute a single document.

I.    Notices. All notices and formal communications required or permitted to be given under any provision of this Agreement shall be in writing and shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the party to whom the same is directed, or if sent by registered or certified mail, or private next day mail, postage and charges prepaid, addressed as follows:

If to Laboratory, to:                        With a copy to:

Southeast Michigan Surgical Hospital 000015

ISH 0015

If given to Client, to:

[address above]   4619 Allen Rd
      Allen Park   MI  48101

Any such notice shall be deemed to be given on the date delivered, or the date deposited in a regularly maintained receptacle for the deposit of United States Mail or private next day mail, addressed as provided above. Either party may change its address for purposes of this Agreement by giving the other party notice of such change in the manner provided above.

J.    Severability.   In the event that any provision hereof is found invalid or unenforceable pursuant to judicial decree or decision, the remainder of this Agreement shall remain valid and enforceable according to its terms.

K.    Waiver of Breach.   The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, nor be construed to be, a waiver of any subsequent breach hereof.

L.    No Third-Party Beneficiaries.   This Agreement is not intended to benefit any person or entity other than the parties to this Agreement.

M.    HIPAA Compliance.   The parties agree to maintain the privacy and security of health information as required by federal and state law, including the regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as such rules may be amended or modified from time to time.

N.    Rights and Remedies Cumulative.   All rights, remedies, and benefits provided to the parties hereunder shall be cumulative, and shall not be exclusive of any such rights, remedies, and benefits provided by law.

O.    Captions.   The captions or headings appearing in this Agreement are inserted only as a matter of convenience, and in no way explain, interpret, define or limit or describe the scope or meaning of any of the provisions of this Agreement.

Southeast Michigan Surgical Hospital 000016

ISH 0016

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the day and year first above written.

CLIENT:

By: Ali Madha

Its: NP

Date: 12/6/19

DANIELLE CHAMPLIN
NOTARY PUBLIC, STATE OF MI
COUNTY OF GENESEE
MY COMMISSION EXPIRES Feb 28, 2023
ACTING IN COUNTY OF Genesee

LABORATORY:

By: Younger Owen

Its: Partner / Owner

Date: 12-06-2019

Southeast Michigan Surgical Hospital 000017

ISH 0017

# APPENDIX B

Laboratory agrees to install and maintain, at Laboratory's expense, the equipment described below, for Client's use in its facility.

## THE EQUIPMENT CHECKED MAY BE INSTALLED AS SEEN BELOW

Appliance (includes monitor, CPU and modem)

Specimen Label Printer

Laser Printer

The equipment listed above, including all hardware, software, and related documents and materials, hereafter referred to as the "Equipment" or "System," may be installed and used at Client's facility located at:

[Hospital's Name and Address]

## A.    Equipment

1.     The Equipment is and shall remain Laboratory's property.  The Equipment may not be removed from Client's facility without Laboratory's prior written consent.  Client is responsible for maintaining the Equipment in a secure location.  If either party terminates this Agreement, the Equipment will be returned to Laboratory.

2.     Both parties will comply with all laws relating in any way to the use, operation, or maintenance of the Equipment.  Client shall at all time[s] keep affixed to the Equipment all labels that Laboratory may require to show that Laboratory owns the Equipment.  Client grants Laboratory (or Laboratory's designee) the right to inspect, maintain, or repair the Equipment at any reasonable time.

3.     Client shall not make any alterations, additions, or improvements to the Equipment and Client shall not misuse or abuse the Equipment.  Laboratory agrees to pay all costs associated with repairing  and servicing the Equipment during the term of this Agreement.  If the Equipment is stolen or damaged due to any abuse, misuse, alteration, modification, or unauthorized use of the Equipment by Client or Client Users, Client shall bear all costs

Southeast Michigan Surgical Hospital 000018

ISH 0018

associated with replacing and/or restoring the Equipment to its original condition.  Client agrees to promptly notify Laboratory in writing if the Equipment malfunctions, is damaged or stolen.

**B.      Equipment and Data Use Restrictions**

Client is being provided with Equipment supplied by Laboratory and access to the System for generating requisitions and receiving, storing, and recalling laboratory test results. The Equipment is being installed in Client's facility *solely* for accessing Laboratory's laboratory systems.  No other use of the Equipment is permitted.

Southeast Michigan Surgical Hospital 000019

ISH 0019

# CHASE *for* BUSINESS

Printed from Chase for Business

---

| | |
|---|---|
| Pay to | Dr Baker (...5941) |
| Pay from | SMSH Checking (...8381) |
| Amount | $3,300.00 |
| Send on | May 18, 2020 |
| Deliver by | May 19, 2020 |
| Delivery method | Standard |
| Payment arrives in | 1 business day |
| Addenda | N/A |
| Status | Paid |
| Submitted by | JENESHA BLACKWELL, May 18, 2020 12:25:29 PM |
| Last updated by | Not Available, May 19, 2020 10:20:14 AM |
| Approved by | ALEX BOREL, May 18, 2020 2:48:08 PM |
| Chase transaction number | 5250283792 |

Southeast Michigan Surgical Hospital 000020

ISH 0020

# MICHIGAN SURGICAL HOSPITAL
## AND
## ADVANCED CENTERAL LABS

**THIS LABORATORY AGREEMENT** (this "Agreement") is entered into as of the _28_ day of January  2019 between **Advanced Central Labs, LLC**, a medical laboratory and limited liability company organized in the state of Florida and authorized to do business in the state of Michigan ("Laboratory"), and **Southeast Michigan Surgical Hospital, LLC** d/b/a Michigan Surgical Hospital, a Michigan limited liability company   ("Provider").

**WHEREAS**, Laboratory owns and operates a CLIA-certified and CAP accredited clinical laboratory which performs tests and examinations on human body materials for the purpose of providing information for the diagnosis, prevention or treatment of disease, or the assessment of medical conditions; and

**WHEREAS**, Provider desires to contract with Laboratory to provide laboratory service for Provider's patients and Laboratory desires to perform such services for Provider in an economically prudent manner, pursuant to the terms and conditions set forth herein;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **DUTIES OF LABORATORY**

   a) Laboratory shall perform clinical laboratory testing services as requested by Provider for the benefit of Provider's patients in accordance with the terms of this Agreement ("Services").

   b) Fulfill Medical Director's responsibilities as defined by CAP.

   c) Performance Review to be conducted on a quarterly basis.

   d) Laboratory warrants to Provider that all services provided hereunder shall be performed in accordance with established and recognized clinical laboratory testing procedures and with reasonable care in accordance with applicable federal, state, and local laws.

   h) If specimens cannot be analyzed because of improper collection or degradation in transit or if Laboratory is unable to obtain satisfactory test results on an apparently acceptable specimen, Laboratory will promptly notify Provider. In either case, Provider or patient's insurance will not be charged for the unacceptable specimen or unsatisfactory results.

   i) Laboratory shall maintain high complexity lab accreditation.

   j) The Medical Director shall be Board certified Pathologist or in the process of obtaining Board certification.

   k) The Laboratory shall, at a minimum, be qualified, eligible, and an active current payee for payor reimbursements under Medicare, Medicaid, and Blue Cross/Blue Shield.

   l) The Laboratory shall provide all services hereunder in compliance with all federal, state and local

laws, rules and regulations.

m) Neither the execution and delivery of this Agreement nor the rendering of the Services will violate the provisions of or constitute a default under any other agreement y which the Laboratory is a party or is bound or would preclude the Laboratory from performing the Services or would impose any liability or obligation on Provider for accepting the Services.

n) The Laboratory shall notify Provider in writing within three day of any of the following:

    i) In the event, the Laboratory is required to pay damages in any malpractice judgment or settlement.

    ii) In the event of any civil action or administrative proceeding against the Laboratory relating to the Laboratory's practice, or any criminal or ethical legal action or administrative proceeding of any nature.

    iii) In the event that the Laboratory becomes the subject of a disciplinary or other proceeding or action before any certifying of licensing board or agency or any government body.

2. **DUTIES OF PROVIDER**

a) Provider will provide all information to the Laboratory required for billing, compliance, and performance of service purposes.

b) In addition to the foregoing, Provider is responsible for correctly completing and submitting requisitions to Laboratory for all physician requested laboratory services, including all patient demographic, diagnostic and billing information necessary for submitting an accurate claim to the patient or patient's insurance company.

c) Provider shall ensure that patient specimens referred to Laboratory are obtained in an appropriate container, in adequate quantity, and properly packaged for transport, in accordance with Laboratory's policy and procedure or as otherwise communicated to Provider from time to time, and in accordance with all applicable federal, state and local statutes, rules and regulations

3. **COMPENSATION**

a) For any clinical laboratory services for which Provider request Laboratory to bill Provider and as legally permitted, Laboratory will submit to Provider a monthly statement reflecting such laboratory services furnished to Provider by Laboratory. Such statement shall reflect charges included on the Fee Schedule set forth in Exhibit A, which is expressly incorporated herein by reference. In the event it becomes necessary to bring collection proceedings to collect amounts owed to Laboratory hereunder, Provider shall be responsible for all reasonable costs associated with such collection efforts, including attorneys' fees.

b) Laboratory agrees to bill directly the patient or other responsible party (including, but not limited to, Medicare and Medicaid) for laboratory services where Provider requests such direct billing or direct billing is required by law or contract. Provider agrees to promptly provide Laboratory with all

information necessary to bill and collect amounts due from patients or responsible parties for such laboratory tests.

4. **MEDICARE TESTING**

   a) Provider recognizes that when billing directly Medicare, Medicaid or another responsible party, Laboratory's charge will be based on its usual charge for the test, as changed from time to time, and that Laboratory shall be paid for clinical laboratory services covered by Medicare or Medicaid pursuant to fee schedules established by those programs. Provider may request from Laboratory the Medicare intermediary local medical review policy ("LMRP") or national coverage determinations ("NCD") for lab tests and the laboratory fee schedule used by the Medicare intermediary to reimburse Laboratory for covered tests furnished to Medicare patients.

   b) Provider acknowledges that Medicare will pay only for test that are covered reasonable and necessary for the patient, given his or her clinical condition, and that Medicare may deny payment for a test that Provider believes is appropriate, such as for screening, but which does not meet specific Medicare requirements. Provider, not Laboratory, shall be responsible for determining the medical necessity of tests ordered by Provider. Accordingly, Provider shall instruct Laboratory to seek Medicare payment for a test ordered by Provider only when Provider believes that the test is covered, reasonable, and medically necessary for the diagnosis or treatment of Provider's patient for whom the test was ordered, and not for screening. Provider shall provide a diagnosis code that supports the medical necessity of the test(s) for all laboratory tests that will be billed to Medicare, Medicaid or any other federal or state program.

   c) Notwithstanding the above, Provider may instruct Laboratory to file a claim for Medicare payment for a test which Provider believes is excluded from coverage as not reasonable and necessary if Provider obtains a written statement from the patient (or his or her representative) that Provider has informed the patient (or representative) of the noncoverage of the test and that the patient or his or her representative has agreed to be financially responsible for paying Laboratory's usual charge for the test. Provider shall complete an Advance Beneficiary Notice ("ABN") complying with Medicare Program requirements. The ABN should clearly identify the beneficiary name, particular lab service(s) to which it relates, and the likely reason for such denial. Provider shall provide a copy of the ABN to Laboratory with the test requisition and a copy to the beneficiary. Provider may also instruct Laboratory to file a claim for Medicare payment for a non-covered clinical laboratory test if the patient believes that the service is covered or wants a formal government determination, and Provider has provided documentation to Laboratory reflecting the patient's request that the claim be submitted with the test requisition.

5. **TERMS AND TERMINATION**

   a) Term. This Agreement shall remain in effect for an initial term of twelve (12) [handwritten: thirty six 36 nb] months (the "Initial Term") from the date hereinafter first written and shall automatically renew for additional terms of one year each.

   b) Termination upon Breach. This Agreement may be terminated by either party in the event of a material breach by the other party, upon the giving of fifteen (15) days written notice setting forth

such breach. However, if such breach is cured within such fifteen (15) day period, then such notice will be deemed to be withdrawn.

c) Termination Without Cause.   Either party may terminate this Agreement, with or without cause, upon thirty (30) days prior written notice to the other party.

6. **INDEPENDENT CONTRACTOR** In the performance of the work, duties and obligations of Laboratory under this Agreement, it is mutually understood and agreed that Laboratory is at all times acting and performing as an independent contractor. Provider shall neither have nor exercise any control or direction over the methods by which Laboratory or its employees shall perform their work and functions.

7. **CONFIDENTIALITY**

a) Confidentiality of Agreement. All provisions in this Agreement, including all exhibits hereto, are strictly confidential. Provider is prohibited from communicating, or permitting to be communicated by any of its employees, officers or owners, any of the contents of this Agreement to any third party except in an instance when expressly required by law. Access to the contents of this Agreement shall be strictly limited to only those employees who have a definite "need to know" its contents, as necessary to the performance of this Agreement. The provisions of this paragraph shall survive the termination of this Agreement.

b) Confidentiality of Patient Information. Provider and Laboratory agree that clinical records of patients related to the ordering of laboratory tests and/or test reports shall be regarded as confidential as protected health information. Both parties shall comply with all applicable federal and state laws and regulations regarding to the use and disposition of such information, including without limitation the provisions of the Health Insurance Portability and Accountability Act 1996, codified at 42 U.S.C. §§ 1320d through 1320d-8 ("HIPAA") and its implementing regulations (the "HIPAA Regulations"). Without the prior written consent of Laboratory, Provider shall not manipulate, aggregate, integrate, compile, merge, reorganize, regenerate or otherwise use the information (except for its own internal clinical purposes) and shall not provide the information to any person or entity, except as required or authorized by applicable law. The provisions of this paragraph shall survive the termination of this Agreement.

8. **ACCESS TO RECORDS** For a period of four (4) years following the last date Laboratory furnishes services pursuant to this Agreement, Laboratory shall make available, upon written request by the Secretary of the United States Department of Health and Human Services ("HHS"), the Comptroller General of the United States or any of their duly authorized representatives, all contracts, books, documents and other records of Provider or Laboratory, as applicable, which are necessary to verify the nature and extent of the costs of the services provided hereunder. If Laboratory carries out any of its duties under this Agreement through a subcontract with an organization involving a value of cost of $10,000.00 or more over twelve (12) month period, Laboratory will cause the subcontract to contain a clause comparable to the clause specified in the preceding sentence.

9. **INSURANCE** Laboratory maintains professional liability insurance in the amount of $____ per incident and $_____ annual aggregate which covers professional services rendered pursuant to this Agreement. Laboratory will provide a certificate of insurance upon request.

10. **LIABILITY** Each party shall be responsible for the acts and omissions of itself and its employees and shall not be responsible for the acts and omissions of the other party or its employees.

11. **APPLICABLE LAW** This Agreement shall be governed by and construed in accordance with the laws of the state of Michigan.

12. **COMPLIANCE WITH LAWS**

   a)   This Agreement is intended to comply with any and all federal and state statutes, regulations and rules, including but not limited to HIPAA, 42 U.S.C. § 1320a-7b(b) (the "Fraud and Abuse Statute") and 42 U.S.C. § 1395nn and 42 U.S.C. § 1395nn (the "Stark Law") and the safe harbors and exceptions promulgated pursuant the Fraud and Abuse Statute and the Stark Law, as amended from time to time. In the event that any law, regulation or administrative or judicial interpretation is adopted, amended, promulgated, modified or issued which prohibits or restricts all or any party of this Agreement, the parties shall either: (i) renegotiate this Agreement in the manner intended to comply with such law, regulation or decision; or (ii) terminate the Agreement without penalty to either party.

   b)   Each party represents and warrants to the other party in particular, with respect to all protected health information (as that term is defined under HIPAA), that it is a covered entity (and not a business associate of the other party) under the HIPAA Regulations and that it shall protect the privacy, integrity, security, confidentiality and availably of the protected health information disclosed to, used by, or exchanged by the parties by implementing appropriate privacy and security policies, procedures, and practices and physical and technological safeguards and security mechanisms, all as required by, and set forth more specifically in the HIPAA Regulations. The provisions of this paragraph shall survive the termination of this Agreement.

   c)   The amounts to be paid hereunder represent the fair market value of the services to be provided as established by arms length negotiations by the parties and have not been determined in any manner that takes into account the volume or value of any potential referrals between the parties. No amount paid hereunder is intended to be, nor shall it be construed to be, an inducement or payment for referral of patients by any party to any other party. In addition, the amounts charged hereunder do not include any discount, rebate, kickback or other reduction in charges, and the amount charged is not intended to be, nor shall it be construed to be, an inducement or payment for, referral of patients by any party to any other party.

   d)   If at any time while this Agreement is in effect, a governmental law or regulation is adopted or promulgated that prohibits, limits or in any way materially affects either party's rights or obligations hereunder, either party may give the other party notice of its intent to amend this Agreement in a fashion that is equitable to each party considering such restriction, prohibition, limitation or change, and the parties shall negotiate in good faith to accomplish such amendment. If, after 30 days, agreement on the amendment is not reached, the either party shall have the right to terminate this agreement upon fifteen (15) days written notice to the other party.

13. **NON-EXCLUSION** Each party represents and warrants that it is not an Excluded Provider. For purposes of this Section, the term "Excluded Provider" means a person or entity that either (i) has been convicted

of a crime related to health care, or (ii) is currently listed by a federal agency as debarred, excluded or otherwise ineligible for participation in federally funded programs (including without limitation, federally-funded health care programs such as Medicare and Medicaid). Each party shall notify the other party within five (5) days after it receives notice that the notifying party is an Excluded Provider. The party receiving the notice shall have the right to terminate this Agreement at any time after learning that notifying party is an Excluded Provider.

14. **FORCE MAJEURE** Laboratory shall not be liable for any claims or damages if such claims or damages result or arise out of a failure or delay that is due to any act beyond the reasonable control of the Laboratory.

15. **MISCELLANEOUS**

a) This Agreement, along with Exhibit A, set forth the entire understanding between the parties with respect to the subject matter hereof, and prior or contemporaneous written or oral agreements are merged herein.

b) If any part of this Agreement shall be determined to be unenforceable in a court of competent jurisdiction for any reason, such part shall be deemed severable from the remainder hereof and this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

c) Neither party shall assign its rights or delegate its duties under this Agreement without the prior written consent of the other party. Notwithstanding the foregoing, Laboratory may assign this Agreement to an affiliate of Laboratory.

d) No waiver of any term, provision, or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further and continuing waiver of any such term, provision or condition of this Agreement. No amendment to any provision of this Agreement shall be effective unless in writing and signed by each party.

e) Should any litigation be commenced by any party concerning any provision of this Agreement or the right and duties of any party, the prevailing party shall be entitled, in addition to such other relief as may be granted, to reasonable attorney's fees and costs.

f) Laboratory certifies that all requirements have been met for coverage of services under Title XVIII of the Social Security Act.

g) In accordance with Title VI of the Civil Rights Act of 1964, Laboratory does not refuse, limit, or terminate services to patients based on race, color, sex, national origin, or handicap. Services will be provided to all patients equally based on individual need for the service.

h) All notices required or permitted to be given hereunder shall be in writing and deemed to have been given (i) upon delivery if hand-delivered or delivered by receipted overnight courier, or (ii) three (3) days after deposit in the U.S. Mail if sent by certified or registered mail, return receipt requested. All such notices shall be addressed as set forth below:

If to Laboratory: _____

Southeast Michigan Surgical Hospital 000026

ISH 0026

With a copy to: _____

If to Provider: _____

i)   This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

j)   Laboratory license numbers:

CAP   _____

CLIA   _____

k)   Tax ID:   _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement to be effective as of the day and year first above written.

**LABORATORY:**

Central Advanced Laboratory, LLC

By: _____

Name: _Anwar Baker_

Title: _Owner_

Date: _01/28/19_

**PROVIDER:**

Southeast Michigan Surgical Hospital, LLC

By: _____

Name: _Atif Bawahab_

Title: _CEO for SMSH_

Date: _1/28/19_

Southeast Michigan Surgical Hospital 000027

ISH 0027

## <u>EXHIBIT A</u>

(Insert Fee Schedule)

Southeast Michigan Surgical Hospital 000028

ISH 0028

## EQUIPMENT ADDENDUM

**THIS EQUIPMENT ADDENDUM** (this "Addendum") is entered into as of the_____ day of_____, 2019 by and between Central Advanced Laboratory, LLC, a Florida limited liability company authorized to do business in Michigan ("Laboratory") and Southeast Michigan Surgical Hospital, LLC d/b/a Michigan Surgical Hospital, a limited liability company duly registered under the laws of Michigan ("Provider"), in connection with that certain Laboratory Agreement, of even date herewith, entered into between the parties (the "Laboratory Agreement").

1. The equipment (the "Equipment") necessary to use Laboratory's electronic order/results system (the "System") shall be provided by Laboratory at Laboratory's expense. The Equipment is and shall remain the property of Laboratory. The Equipment may not be removed from Provider's facility without Laboratory's prior written consent. If either party terminates the Laboratory Agreement, the Equipment will be returned to Laboratory.

| Description | Quantity | Model/Version |
|---|---|---|
| Desktop/Laptop | | |
| Printer | | |
| Phone/Fax | | |
| | | |
| | | |

2. The Equipment is being provided for the sole purpose of generating laboratory requisitions and receiving, storing and recalling laboratory test results. No other use of the Equipment is permitted.

3. Both parties will comply with all laws relating in any way to the use, operation, or maintenance of the Equipment. Provider shall at all times keep affixed to the Equipment all labels that Laboratory may require to show that it owns the Equipment. Laboratory reserves the right to inspect, maintain, or repair the Equipment at any reasonable time.

4. Provider shall not make any alterations, additions, or improvements to the Equipment and shall not misuse or abuse the Equipment. Laboratory shall pay all costs associated with repairing and servicing the Equipment during the term of the Laboratory Agreement. However, if the Equipment is stolen or damaged due to any abuse, misuse, alteration, modification, or unauthorized use of the Equipment, Provider shall bear all costs associated with replacing and/or restoring the Equipment to its original condition. Provider shall promptly notify Laboratory in writing if the Equipment malfunctions, is damaged or stolen.

5. Laboratory will provide to Provider a comprehensive test plan to validate interface function of the System with the client's EMR (the "Test Plan"). The purpose of the Test Plan is to ensure that orders and/or

receiving results flow through the interface without distortion of content. It is Provider's sole responsibility to complete this Test Plan. Laboratory will work with Provider to assist with the testing where appropriate and will assist in resolving issues related to the interface.

6.  Provider will be responsible for any changes to its EMR application necessitated by the interface or use of the System.

7.  Laboratory will provide training to Provider's staff members for use of the System. Provider will be responsible for any vendor required training as a result of its use of the System.

8.  Laboratory will pay for the monthly data line service charges applicable to the use of the Equipment in accordance with the purpose and intentions set forth herein.

Southeast Michigan Surgical Hospital 000030

ISH 0030

## <u>JOINT VENTURE ADDENDUM</u>

So long as doing so does not violate and state or federal healthcare regulations, any contractual agreement either party is party to, or the requirements of CLIA, CAP the Joint Commission, or any other accrediting body selected by either party, then parties shall establish a Joint Venture Hospital Laboratory with the following terms:

1. The ownership and profit will be split evenly, 50/50, between the two parties.

Southeast Michigan Surgical Hospital 000031

ISH 0031

**ADVANCED CENTRAL LABORATORY, LLC**

*AB*

By: _____

Name: Anwar Baker

Title: Owner

Date signed: 01/28/19

**SOUTHEAST MICHIGAN SURGICAL HOSPITAL, LLC**

*AB*

By: _____

Name: Atif Bawahab

Title: CEO for SMSH

Date signed: 1/28/19

Southeast Michigan Surgical Hospital 000032

ISH 0032